[No. B029329. Second Dist., Div. Seven. June 10, 1988.]

REX F. HAZEL, Plaintiff and Appellant, v.
EDMOND HEWLETT, Defendant and Respondent.

1460

COUNSEL

Tuohey & Prasse, Conrad G. Tuohey and Bonnie Gail Birnbaum for Plaintiff and Appellant.

Rigg & Dean, Marilyn Bonetati and Thomas G. Wianecki for Defendant and Respondent.

OPINION

LILLIE, P. J.—In this dental malpractice action plaintiff, Rex Hazel, appeals from judgment entered in favor of defendant Edmond Hewlett, D.D.S., and against plaintiff after the trial court sustained defendant's affirmative defense of the statute of limitations.

### FACTUAL AND PROCEDURAL BACKGROUND

In June 1983 plaintiff went to the offices of Carl Stasiewicz, D.D.S., for dental treatment. Dr. Stasiewicz determined that it was necessary to extract 13 of plaintiff's teeth and he extracted 7 of them during plaintiff's next two visits. On the last of these visits Dr. Stasiewicz told plaintiff the remaining extractions would be performed by Dr. Edmond Hewlett. When plaintiff went to the offices of Dr. Stasiewicz on August 5, 1983, Dr. Hewlett introduced himself to plaintiff by name and then performed the remaining six extractions. On plaintiff's initial visit he completed a medical questionnaire form wherein he indicated that he had had rheumatic fever. Despite this information neither Dr. Stasiewicz nor Dr. Hewlett administered antibiotics to plaintiff in the course of the extractions. Within two weeks after completion of his dental work, plaintiff experienced total loss of appetite,

listlessness and general ill health. Plaintiff consulted a physician, Dr. David Hamm. On September 26, 1983, Dr. Hamm had plaintiff admitted to the hospital where he remained until October 19, 1983. On October 1, 1983, Dr. Hamm informed plaintiff he was suffering from subacute bacterial endocarditis (SBE) which the doctor defined as "bacteria in the bloodstream that lodges on your heart." Also on October 1, 1983, Dr. Hamm told plaintiff that in his opinion plaintiff's SBE was caused by extensive dental extractions without antibiotic coverage, the administration of antibiotics being necessary in plaintiff's case because of his history of rheumatic fever.

On August 27, 1984, plaintiff served Dr. Stasiewicz with notice of intention to sue health care provider. (Code Civ. Proc., § 364.)[1] On December 11, 1984, plaintiff filed suit for dental malpractice naming as defendants Dr. Stasiewicz and Does 1 through 100. The complaint alleged that defendants negligently treated plaintiff in that they failed to prescribe the appropriate antibiotics before, during and after their treatment of plaintiff; as a result of such negligence plaintiff contracted SBE. On July 8, 1985, plaintiff amended the complaint to name Dr. Hewlett in place of Doe 51. Dr. Hewlett answered the amended complaint alleging as an affirmative defense that the action is barred by the statute of limitations set forth in section 340.5. Pursuant to motion by Hewlett, the court ordered that the matter be bifurcated for trial with the issue of the statute of limitations to be tried prior to the issues of liability and damages. (§ 597.5)[2]

Following trial on Hewlett's defense of the statute of limitations the court issued a statement of decision which included the following determinations: On October 1, 1983, Dr. Hamm told plaintiff he should have received antibiotic coverage before, during and after the dental extractions and that the lack of such coverage caused the SBE from which he suffered. On October 1, 1983, plaintiff believed he was a victim of dental negligence and malpractice, knew defendant Hewlett was one of the dentists who performed the extractions, and thought Hewlett as well as defendant Stasiewicz was negligent. Accordingly, the one-year statute of limitations of section 340.5 began to run October 1, 1983. Hewlett was not named in plaintiff's verified complaint, filed December 11, 1984, and in any event the one-year statute of limitations applicable to the cause of action against him expired October 1, 1984. Even if service of notice of intention to sue on defendant

---

[1] All statutory references are to the Code of Civil Procedure.

[2] Section 597.5 provides in pertinent part: "In an action against a . . . dentist . . . , based upon such person's alleged professional negligence, or for rendering professional services without consent, or for error or omission in such person's practice, if the answer pleads that the action is barred by the statute of limitations, and if any party so moves or the court upon its own motion requires, the issues raised thereby must be tried separately and before any other issues in the case are tried. If the issue raised by the statute of limitations is finally determined in favor of the plaintiff, the remaining issues shall then be tried."

Stasiewicz added 90 days to the 1-year statute of limitations for causes of action against fictitiously named defendants, under section 474 naming Hewlett in place of a Doe defendant did not relate back to the filing of the original complaint because when it was filed plaintiff knew both Hewlett's name and his role in the dental extractions upon which the malpractice action was based.

Judgment was entered in favor of defendant Hewlett and against plaintiff. Plaintiff appeals from the judgment.[3]

## DISCUSSION

■ Under section 340.5, a medical malpractice action must be brought within three years after the date of injury or one year after the plaintiff discovered or should have discovered the injury, whichever occurs first. (*Braham* v. *Sorenson* (1981) 119 Cal.App.3d 367, 370 [174 Cal.Rptr. 39].) The term "injury," as used in section 340.5, means both a person's physical condition and its negligent cause. (*Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 896 [218 Cal.Rptr. 313, 705 P.2d 886].) Because section 364 requires a 90-day notice before commencement of an action based on professional negligence of a health care provider, it serves to stay the suit and triggers section 356 which mandates that the 90-day period specified in section 364 be excluded from calculation of the time limited.[4] (*Hilburger* v. *Madsen* (1986) 177 Cal.App.3d 45, 52 [222 Cal.Rptr. 713].) These 90 days are added to the 1-year statutory time. (*Ibid.*) ■ As the trial court found, the one-year statute of limitations commenced to run October 1, 1983, when plaintiff learned his SBE was caused by negligent failure to provide antibiotic coverage for the dental extractions. On August 27, 1984, plaintiff served notice of intention to sue on Dr. Stasiewicz. Accordingly, the one-year statute of limitations, which normally would have expired on October 1, 1984, was extended by ninety days, to December 30, 1984. Plaintiff's complaint was filed December 11, 1984, within the extended statutory period. ■ Section 364 includes the following provision: "(e) The provisions of this

---

[3] Because the judgment left no issues to be determined between plaintiff and defendant Hewlett, it is appealable even though the action continues against defendant Stasiewicz. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 821, fn. 3 [122 Cal.Rptr. 745, 537 P.2d 865]; *Gilbert* v. *Sacramento Unified School Dist.* (1968) 258 Cal.App.2d 505, 508 [65 Cal.Rptr. 913].)

[4] The relevant statutes provide in pertinent part: Section 364: "(a) No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action. . . [¶] (d) If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice."

Section 356: "When the commencement of an action is stayed by . . . statutory prohibition, the time of the continuance of the . . . prohibition is not part of the time limited for the commencement of the action."

section shall not be applicable with respect to any defendant whose name is unknown to the plaintiff at the time of filing the complaint and who is identified therein by a fictitious name, as provided in Section 474." This language means that the 90-day notice need not be given to Doe defendants before amending the complaint to name them, not that suit against Doe defendants must be commenced within 1 year after the plaintiff's discovery of his cause of action. (*Grimm* v. *Thayer* (1987) 188 Cal.App.3d 866, 869-871 [233 Cal.Rptr. 687].) ▮ Accordingly, plaintiff's complaint was timely filed as against the Doe defendants named therein as well as Dr. Stasiewicz, the specifically named defendant served with notice of intention to sue. (*Ibid.*)

▮ The remaining question is whether amendment of the complaint to name Dr. Hewlett in place of Doe 51 related back to the date of filing of the complaint, thus defeating the bar of the statute of limitations.

Section 474 provides in pertinent part: "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . . ." ▮ When a complaint sets forth a cause of action against a defendant designated by a fictitious name and his true name thereafter is discovered and substituted by amendment, he is considered a party to the action from its commencement so that the statute of limitations stops running as of the date the original complaint was filed. (*Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 599 [15 Cal.Rptr. 817, 364 P.2d 681]; *Cooper* v. *Jevne* (1976) 56 Cal.App.3d 860, 873 [128 Cal.Rptr. 724].) For this rule to apply, it is necessary that the plaintiff actually be ignorant of the name or identity of the fictitiously named defendant at the time the complaint is filed. (*Streicher* v. *Tommy's Electric Co.* (1985) 164 Cal.App.3d 876, 882 [211 Cal.Rptr. 22]; *Olden* v. *Hatchell* (1984) 154 Cal.App.3d 1032, 1035, fn. 6 [201 Cal.Rptr. 715].) The phrase "when the plaintiff is ignorant of the name of a defendant" in section 474 has not been interpreted literally. It includes situations where the plaintiff " 'knew the identity of the person but was ignorant of the facts giving him a cause of action against the person [citations], or knew the name and all the facts but was unaware that the law gave him a cause of action against the fictitiously named defendant and discovered that right by reason of decisions rendered after the commencement of the action. [Citation.]' " (*Marasco* v. *Wadsworth* (1978) 21 Cal.3d 82, 88 [145 Cal.Rptr. 843, 578 P.2d 90], quoting *Barnes* v. *Wilson* (1974) 40 Cal.App.3d 199, 205 [114 Cal.Rptr. 839].) "The lack of knowledge of the true name of a defendant, however, must be 'real and not feigned.' [Citation.] A plaintiff must actually be ignorant of the facts giving

him a cause of action against a defendant. 'Ignorance of the facts is the critical issue . . . .' [Citations.]" (*Munoz* v. *Purdy* (1979) 91 Cal.App.3d 942, 947 [154 Cal.Rptr. 472].) "The pivotal question in this regard is 'did plaintiff know *facts*?' not 'did plaintiff know or believe that [he] had a cause of action based on those facts?' [Citation.]" (*Scherer* v. *Mark* (1976) 64 Cal.App.3d 834, 841 [135 Cal.Rptr. 90]; original italics.) The question of the plaintiff's good faith in this regard is for the determination of the trial court. (*Ibid.*)

■ The trial court impliedly resolved the question of good faith against plaintiff. That determination is supported by the following evidence: On August 5, 1983, Dr. Hewlett introduced himself by name to plaintiff before extracting the last of plaintiff's teeth scheduled for extraction; while Dr. Hewlett prescribed penicillin for plaintiff during his follow-up visit on August 10, 1983, the extractions by that time were completed and he prescribed penicillin because of the condition of plaintiff's mouth and his complaints of pain, not because of any knowledge of plaintiff's history of rheumatic fever; plaintiff was aware that Dr. Hewlett did not administer antibiotics on August 5, 1983, the day he made the extractions; on October 1, 1983, plaintiff was told by Dr. Hamm that plaintiff's SBE was caused by failure to administer antibiotics before, during and after the extractions. Thus, when plaintiff filed his original complaint (Dec. 11, 1984) he knew all of the basic facts constituting a cause of action for professional negligence against Dr. Hewlett.

Plaintiff argues he did not know of the professional relationship between defendants until he learned, from defendant Stasiewicz's answers to interrogatories, that Dr. Hewlett was Stasiewicz's "associate" when Hewlett performed the final series of extractions. Plaintiff insists such information was crucial to the existence of a cause of action against Hewlett because without it plaintiff did not know whether he should sue both defendants. It is unnecessary to decide whether the professional relationship of the defendants was an element of plaintiff's cause of action against Hewlett because the record does not show that plaintiff first learned through discovery that Hewlett was Stasiewicz's associate. It does not contain Stasiewicz's answers to interrogatories and in the portion of the record upon which plaintiff relies Stasiewicz testified merely that in his answer to one of the interrogatories he "identified Dr. Hewlett as being a dentist who also worked on Mr. Hazel." Further, elsewhere in his appellant's brief plaintiff asserts that when Stasiewicz advised plaintiff that Hewlett was going to finish the extractions he referred to Hewlett as his associate. Thus, plaintiff in effect concedes that he did not first learn Hewlett was Stasiewicz's associate after the complaint was filed, but on the contrary was given that information before Hewlett performed the final series of extractions.

Plaintiff contends the judgment must be reversed because defendant Hewlett failed to show that he suffered prejudice as a result of plaintiff's untimely amendment of the complaint to name Hewlett in place of Doe 51. The contention lacks merit. ■ Where plaintiff does not know the facts giving rise to a cause of action against a person when the complaint is filed, and after acquiring the necessary knowledge amends the complaint to substitute that person as a named defendant in place of a fictitious one, the amendment relates back to the filing of the original complaint unless the newly named defendant can show actual prejudice resulting from unreasonable delay in filing the amendment. (See *Smeltzley* v. *Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 939 [136 Cal.Rptr. 269, 559 P.2d 624, 85 A.L.R.3d 121]; *Barrows* v. *American Motors Corp.* (1983) 144 Cal.App.3d 1, 9-10 [192 Cal.Rptr. 380].) However, where the requirements of section 474 are not met, lack of prejudice alone does not allow the addition of a new defendant by amendment after the statute of limitations has run. (Cf. *Gribin Von Dyl & Associates, Inc.* v. *Kovalsky* (1986) 185 Cal.App.3d 653, 660 [230 Cal.Rptr. 50] [lack of prejudice does not permit relief from default where party seeking such relief fails to establish sufficient grounds therefor].)

A like analysis applies to plaintiff's reliance on the principle that cases should be decided on their merits. (*Smeltzley* v. *Nicholson Mfg. Co., supra,* 18 Cal.3d 932, 939.) That truism does not compensate for plaintiff's failure to meet the requirements of section 474 in seeking to add Hewlett as a defendant.

■ This conclusion is not altered by evidence that before plaintiff's action was filed Drs. Stasiewicz and Hewlett discussed the possibility of a lawsuit against them based on their treatment of plaintiff; Hewlett was aware of the subsequent filing of the complaint naming Stasiewicz as a defendant. Plaintiff relies on the following language in *Austin* v. *Massachusetts Bonding & Insurance Co., supra,* 56 Cal.2d 596, to excuse his failure to name Hewlett as a defendant in the original complaint: "[A] defendant sued by a fictitious name and later brought into the case by an amendment substituting his true name is considered a party to the action from its commencement for purposes of the statute of limitations. A defendant unaware of the suit against him by a fictitious name is in no worse position if, in addition to substituting his true name, the amendment makes other changes in the allegations on the basis of the same general set of facts. And of course, as to a defendant who knows that he has been designated by a fictitious name in the original complaint, application of the modern rule does not affect him differently from a defendant designated by his true name." (Pp. 602-603.) First, viewing the evidence in a light most favorable to the judgment (*Bank of America* v. *Cory* (1985) 164 Cal.App.3d 66, 85 [210 Cal.Rptr. 351]), Hewlett did not believe he had been sued as a Doe

defendant because he reasonably could conclude that since plaintiff, with knowledge of Hewlett's identity and role in the dental extractions, did not sue him by name in the original complaint he did not intend to sue him at all. Further, in the quoted passage the *Austin* court concluded in effect that where amendments, made after expiration of the statute of limitations, seek recovery on the same general facts alleged in the original complaint and substitute a named defendant in place of a fictitious one, the amendment changing the allegations of the original complaint is applicable to the newly named defendant whether or not he knew he was sued by a fictitious name in such complaint. *Austin* does not stand for the proposition that where (as in the instant case) plaintiff knows the identity of a potential defendant when the original complaint is filed but does not substitute his name in place of a fictitiously named defendant within the limitations period, that defendant nevertheless is considered a party to the action from its inception merely because he may have had reason to believe that plaintiff intended the fictitiously named defendant to refer to him.

DISPOSITION

The judgment is affirmed.

Johnson, J., and Reese, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.