[No. B049894. Second Dist., Div. One. Mar. 19, 1991.]

OPTICAL SURPLUS, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
MARTIN NISKAR, Real Party in Interest.

MARTIN NISKAR, Plaintiff and Respondent, v.
MBS OPTICS, INC., et al., Defendants and Appellants;
TERRANCE R. McKNIGHT, Objector and Appellant.

778

COUNSEL

McKnight & Osborne, Terrance R. McKnight and Jane M. Osborne for Petitioner, Defendants and Appellants, and Objector and Appellant.

No appearance for Respondent Superior Court.

Cooper, Epstein & Hurewitz, Barry E. Mallen and Thomas L. Taylor III, for Real Party in Interest and Plaintiff and Respondent.

OPINION

DEVICH, Acting P. J.—

INTRODUCTION

In this case, the trial court not only erred in denying a motion which should have been granted, it also imposed sanctions against the moving party, a codefendant which had not joined in the motion, and their attorney.

MBS Optics, Inc. (MBS), Optical Surplus, Inc. (Optical), and their attorney, Terrance McKnight (collectively appellants), appeal from the trial court's order imposing sanctions pursuant to Code of Civil Procedure section 128.5[1] following Optical's unsuccessful motion to quash service of summons. We reverse, with directions to the trial court to vacate the sanction order.

---

[1] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.
Section 128.5 provides, in relevant part:
"(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . .
"(b) For purposes of this section:
"(1) 'Actions or tactics' include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint. The mere filing of a complaint without service thereof on an opposing party does not constitute 'actions or tactics' for purposes of this section.
"(2) 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party.
"(c) Expenses pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or the court's own motion, after notice and opportunity to be heard. An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order."

Furthermore, given the unusual circumstances of this case, in order to correct a manifest injustice to Optical and to conserve limited judicial resources which would otherwise be wasted by an unwarranted trial against Optical, we construe the notice of appeal to include a petition for a writ of mandate seeking relief from the order denying the motion to quash. (See *Branham* v. *State Farm Mut. Auto. Ins. Co.* (1975) 48 Cal.App.3d 27, 32-33 [121 Cal.Rptr. 304].)[2] We issue the writ directing the trial court to vacate its order denying the motion to quash and enter a new order granting the motion.

## BACKGROUND

On August 4, 1988, Niskar filed a complaint against MBS, Martin Singer, and several Doe defendants, alleging causes of action for "1. intentional interference with contractual relations; 2. intentional interference with prospective economic advantage; 3. unfair competition[;] 4. conspiracy; 5. intentional infliction of emotional distress; [and] 6. imposition of a constructive trust based upon unjust enrichment." The gist of Niskar's complaint was that the various defendants were distributing eyeglass frames manufactured by Metzler International Optics, Inc. (Metzler) in violation of an agreement between Niskar and Metzler granting Niskar the exclusive right to distribute such frames in California.

On February 8, 1990, Niskar amended his complaint pursuant to section 474, substituting Optical for Doe 1.

On March 13, 1990, Optical filed a motion, drafted by McKnight, to quash service of summons on the amended complaint. The ground for

---

[2] Section 418.10, subdivision (c) provides that a party may seek a writ of mandate within 10 days after service of notice of an order denying a motion to quash. When service of notice is by mail, section 1013 operates to allow an additional five days within which to file a petition for a writ of mandate. (*Shearer* v. *Superior Court* (1977) 70 Cal.App.3d 424, 426 [138 Cal.Rptr. 824].) In the case at bench, the notice of appeal was filed on the 15th day following Niskar's mailing of notice of the trial court's order.

On March 4, 1991, we notified the parties of our intent to construe the notice of appeal to include a timely petition for a writ of mandate, and that we were considering issuance of a writ in the first instance. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 [203 Cal.Rptr. 626, 681 P.2d 893].) Although no timely opposition was filed, Martin Niskar informed this court that on January 3, 1991, Cooper, Epstein & Hurewitz obtained an order from the superior court granting its motion to withdraw as counsel of record. Niskar's notice was not filed until March 13, 1991, a date subsequent to oral argument in this matter. However, since Cooper, Epstein & Hurewitz filed a respondent's brief on November 27, 1990, the January 3, 1991, superior court order cannot serve to relieve it as counsel of record before this court. (See Cal. Rules of Court, rule 48(b) ["Withdrawal . . . of attorneys may be effected by serving and filing a stipulation *in the reviewing court*, signed by the party, the retiring attorney and any substituted attorney. In the absence of stipulation, withdrawal . . . may be effected only by an order made pursuant to a motion *in the reviewing court* as provided in rules 41 and 42 . . . ." (Italics added.)].)

Optical's motion, as stated in the notice of the motion, was "that [Niskar] knew the name of [Optical]; [Niskar's] current counsel wrote to this company, making a formal legal demand upon [Niskar's] very claim herein; and, therefore, [Niskar's] attempt to employ [] Section 474 to add this company as a defendant is entirely improper and in bad faith." Attached to the motion was a letter sent to Optical by Niskar's attorneys dated March 24, 1988. The letter, which was sent to Optical more than four months before Niskar filed his original complaint, stated, in pertinent part: "Our client has learned that you have been actively engaged in the sale and solicitation of orders for the sale of eyeglass frames manufactured by Metzler [] in the state of California. This is in direct violation of our client's rights and it is actionable."

Niskar opposed Optical's motion and requested sanctions pursuant to section 128.5. In this regard, Niskar provided the trial court with Optical's reply to the March 24, 1988, letter which stated, in relevant part: "You state in your letter that [Optical] has been 'actively engaged in the sale and solicitation of orders for the sale of eyeglass frames manufactured by Metzler [] in the state of California.' This is not true." The letter goes on at some length to explain that Optical acknowledged Niskar's status as exclusive distributor and to explain what Optical was doing.

A declaration by one of Niskar's attorneys claimed that, "[a]t the time we received [Optical's] letter, Niskar had no factual basis for disproving or disbelieving [Optical's] denial of wrongful conduct vis-à-vis our client. Niskar had not yet engaged in discovery, questioned witnesses or adduced convincing evidence which contradicted [Optical]. Moreover, we relied heavily upon [Optical Vice-president] Julie Heldman's representation that she was 'an attorney in good standing in California' in believing [Optical]. [] [¶] In short, at the time the Complaint in this action was filed, Niskar did not have a good faith basis upon which he could have asserted his causes of action against [Optical]. That is the only reason why Niskar did not name [Optical] as a Defendant in the Complaint, in the first place."

The trial court was further informed that a federal court trial against Metzler had recently concluded with a verdict in favor of Niskar for $187,500 in compensatory damages and $2 million in punitive damages. Finally, Niskar's opposition papers indicated that, pursuant to a request of MBS, the state court action against it had been stayed until February 7, 1990, at which time Niskar's motion to lift the stay had been granted. Niskar amended his complaint the day after the stay was lifted.

At the hearing on the motion to quash, McKnight attempted to explain to the trial court that Niskar clearly knew, prior to filing his original com-

plaint, the facts giving rise to his claims against Optical and also knew that Optical's conduct, in Niskar's view, was "actionable." Counsel for Niskar explained that Optical had not been named because it "vigorously denied" that it was doing anything wrong. The trial court summarily denied the motion and indicated its ruling would be in accordance with the tentative ruling, which was to grant Niskar's request for sanctions in the sum of $2,200. When McKnight asked to be heard on the sanctions issue, the trial court refused to entertain argument and stated: "So in other words, your position is that I'm supposed to rule, and then you're supposed to keep arguing? Is that the way you feel I ought to conduct it?" When McKnight tried to explain that sanctions of $2,200 would be reportable to the State Bar[3] and that he had not filed his motion in bad faith, the court simply reiterated its decision to "stick with the tentative."

The minute order on the motion recites: "Plaintiff Martin Niskar is awarded monetary sanctions against defendants MBS [], [Optical] and Terrance R. McKnight [] in the amount of $2,200 pursuant to [section] 128.5 for bad faith actions and tactics that are frivolous and solely intended to cause unnecessary delay. Those actions and tactics are the prosecution of the instant motion, the suppression of the information regarding Niskar's addition of [Optical] as a Doe defendant, and the suppression of items of documentary evidence regarding that topic."

## ISSUES

We first consider whether the trial court abused its discretion when it denied Optical's motion to quash service of summons upon it. We then consider MBS's contention that it was an abuse of discretion for the trial court to impose sanctions against it since it was not a party to the motion to quash service of summons. Finally, we consider the attack on the sanctions order.

## DISCUSSION

I.  *The Motion to Quash*

■ In its moving papers submitted to the trial court, Optical cited *Hazel v. Hewlett* (1988) 201 Cal.App.3d 1458 [247 Cal.Rptr. 723] and argued that

---

[3] Pursuant to Business and Professions Code section 6086.7, subdivision (c), "[t]he imposition of any judicial sanctions against an attorney, except sanctions for failure to make discovery or monetary sanctions of less than one thousand dollars" must be reported to the State Bar of California.

Niskar could not amend his complaint pursuant to section 474 since he knew of Optical's existence and of the facts giving rise to his claim against Optical when he filed his original complaint.

In discussing whether an amendment to a complaint related back to the date of the original complaint, thereby satisfying the applicable statute of limitations, the *Hazel* court stated: "Section 474 provides in pertinent part: 'When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . . .' When a complaint sets forth a cause of action against a defendant designated by a fictitious name and his true name thereafter is discovered and substituted by amendment, he is considered a party to the action from its commencement so that the statute of limitations stops running as of the date the original complaint was filed. [Citations.] For this rule to apply, it is necessary that the plaintiff actually be ignorant of the name or identity of the fictitiously named defendant at the time the complaint is filed. [Citations.] The phrase 'when the plaintiff is ignorant of the name of a defendant' in section 474 has not been interpreted literally. It includes situations where the plaintiff ' "knew the identity of the person but was ignorant of the facts giving him a cause of action against the person [citations], or knew the name and all the facts but was unaware that the law gave him a cause of action against the fictitiously named defendant and discovered that right by reason of decisions rendered after the commencement of the action. [Citation.]" ' [Citation.] 'The lack of knowledge of the true name of a defendant, however, must be "real and not feigned." [Citation.] A plaintiff must actually be ignorant of the facts giving him a cause of action against a defendant. "Ignorance of the facts is the critical issue . . . ." [Citations.]' [Citation.] 'The pivotal question in this regard is "did plaintiff know facts?" not "did plaintiff know or believe that [he] had a cause of action based on those facts?" [Citation.]' [Citation.] The question of the plaintiff's good faith in this regard is for the determination of the trial court. [Citation.]" (201 Cal.App.3d at pp. 1464-1465, italics omitted.)

*Hazel* v. *Hewlett* is not an isolated or aberrant interpretation of section 474. (See, e.g., *Scherer* v. *Mark* (1976) 64 Cal.App.3d 834, 841 [135 Cal.Rptr. 90] ["Ignorance of the *facts* giving rise to a cause of action, like ignorance of the true name, should be real and not feigned. [Citations.]"]; *Munoz* v. *Purdy* (1979) 91 Cal.App.3d 942, 946-947 [154 Cal.Rptr. 472] ["A plaintiff should not be permitted to name a known defendant in a fictitious manner hoping to surprise a defendant by reviving 'claims that

have been allowed to slumber until evidence has been lost, memories have faded and witnesses have disappeared.' [Citations.]"]; *Miller* v. *Thomas* (1981) 121 Cal.App.3d 440, 445 [175 Cal.Rptr. 327] ["But in each of the cases allowing late joinder of known persons under section 474, there has been some showing that at the time the original complaint was filed the plaintiff was ignorant of something having a bearing upon the liability of the newly summoned party. [Citation.]"]; *Dover* v. *Sadowinski* (1983) 147 Cal.App.3d 113, 117-118 [194 Cal.Rptr. 866] ["[I]n order to be required to name a person whom he knows to be involved as a defendant, the plaintiff [need not] be aware of each and every detail concerning that person's involvement."].)

In the case at bench, Niskar's March 24, 1988, demand letter clearly and unequivocally indicated that Niskar knew not only Optical's identity but also its alleged "actionable" activity. Optical's reply to the demand letter was irrelevant, and Niskar's self-serving suggestion that he believed the reply letter cannot change the fact that Niskar knew everything he needed to know about Optical when he filed his original complaint. (*Munoz* v. *Purdy, supra,* 91 Cal.App.3d at p. 947 [" 'Ignorance of the fact is the critical issue, and whether it be due to misinformation or negligence is not relevant.' [Citations.]"].) The stay obtained by MBS is equally irrelevant—it has nothing to do with whether Optical should have been named in Niskar's original complaint. Under the circumstances of this case, the trial court was required, as a matter of law, to grant Optical's motion to quash service of summons. Accordingly, we issue a writ directing the trial court to vacate its order denying the motion to quash and to issue a new order granting the motion.

## II. *The Sanctions Order*

■ "Section 128.5 permits the trial court to impose sanctions under certain narrowly defined conditions. Sanctions are warranted only if the moving party meets its burden of proving that the opposing party's action or tactic was (1) totally and completely without merit, measured by the objective, 'reasonable attorney' standard, or (2) motivated solely by an intention to harass or cause unnecessary delay, measured by a subjective standard. [Citations.] Whether sanctions are warranted depends on an evaluation of all the circumstances surrounding the questioned action. [Citation.]

"Even before the latest amendment to section 128.5, the courts of this state imposed sanctions only in the clearest of cases, to penalize the most

egregious misconduct. This judicial restraint was motivated by serious concerns about the danger of hampering the valid assertion of a litigant's rights. [Citations.]

"The Legislature clarified the conditions under which sanctions may be awarded by its amendment of section 128.5 in 1985. While the previous version of the section . . . permitted sanctions for 'tactics or actions not based on good faith which are frivolous or which caused unnecessary delay,' the current version limits sanctions to bad-faith tactics or actions that are (1) frivolous, i.e., 'totally and completely without merit or . . . for the sole purpose of harassing an opposing party,' or (2) 'solely intended to cause unnecessary delay.' [Citation.]

"Under the current version of section 128.5, once a party shows that his or her action was arguably meritorious (under the circumstances and in light of existing standards for the particular area of law within which the action was taken), the logical conclusion is that the party's motive was probably not solely to harass or cause unnecessary delay, and that sanctions are probably not warranted. Of course, the fact that an action is arguably meritorious is not conclusive proof that the action was not brought solely to harass or delay. However, the party moving for sanctions has the burden of proving that the arguably meritorious action was taken for improper motives. [Citation.]" (*Weisman* v. *Bower* (1987) 193 Cal.App.3d 1231, 1236-1237 [238 Cal.Rptr. 756], fns. and italics omitted.)

To state the obvious, our conclusion that the motion to quash should have been granted as a matter of law necessarily requires that we conclude sanctions were inappropriate in the case at bench. The motion was not merely arguably meritorious, it was absolutely meritorious.[4]

Another factor cited by the trial court as a basis for imposing sanctions was Optical's (and McKnight's) alleged suppression of pertinent information and documentary evidence. The trial court was presumably referring to Optical's reply to Niskar's March 24, 1988, letter and the stay which was in effect until the day before Niskar amended his complaint, evidence of which was attached to Niskar's opposition papers. As we have explained, both items were irrelevant to the motion. It follows that a failure

---

[4] Although represented by the same counsel as Optical, MBS was not a party to Optical's motion to quash service of summons and therefore cannot have sanctions imposed against it for bringing the motion in bad faith.

to disclose the reply or to refer to the stay cannot rationally be relied upon to support an award of sanctions.[5]

## CONCLUSION

In a close case, imposition of sanctions is unwarranted because of its chilling effect on an attorney's obligation to zealously represent his or her client. In the case at bench, imposition of sanctions was an egregious abuse of discretion. This was not a close case but one in which the motion should have been granted as a matter of law. In that context, the award of sanctions did more than chill forceful advocacy—it placed McKnight in an untenable position by misdirecting his attention to an appeal from the sanction order instead of a petition for a writ of mandate attacking the order denying the motion to quash. It is for this reason we undertook, on our own motion, the somewhat extraordinary procedure of treating the notice of appeal as including a petition for a writ of mandate. To do otherwise would have amounted to tacit approval of a gross miscarriage of justice.

We do not suggest that attorneys should be permitted to cloak themselves in the mantle of forceful advocacy and proceed to intimidate their opponents or impose upon our limited judicial resources with truly frivolous motions. We do suggest, however, that trial courts must be vigilant in avoiding conduct that intrudes upon the attorney-client relationship or even implies to an attorney that he or she should do something other than vigorously assert arguably meritorious contentions to advance a client's position.

---

[5] Ironically, Niskar made a similar demand upon MBS to cease and desist, and MBS's reply did not stop Niskar from naming MBS in his original complaint. Niskar conveniently failed to provide the trial court with MBS's reply, which stated, in pertinent part:

"This company sells almost everything it sells to international customers outside the United States. Please be advised that we have never sold, nor offered for sale, and [sic] Metzler product to any optical retailer in the State of California or any other state in which [Niskar] has exclusive arrangements, In fact, we have made only one sale of Metzler product in the United States of America. That sale was to a business that made strict assurances to us that no Metzler product would be resold, directly or indirectly, to any retail establishment either in California or in any other state for which your client, [Niskar], has exclusive distributorship rights.

"Recently I checked with the company to which we made that sale and were [sic] informed that no sales of Metzler product have been made in any of the aforementioned states and I have been assured that they are complying with their original agreement with me. To the best of my knowledge, none of my international customers sells any product they purchase from me to any customer in the United States of America.

"Accordingly, nothing I have been involved with has violated any of your client's rights."

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its April 4, 1990, order denying Optical Surplus, Inc.'s motion to quash service of summons upon it and enter a new and different order granting said motion.

The order imposing sanctions is reversed, and the matter is remanded for the trial court to vacate its April 4, 1990, order imposing sanctions. MBS Optics, Inc., Optical Surplus, Inc., and Terrance McKnight shall recover their costs on appeal.

Ortega, J., and Vogel, J., concurred.