[No. B068841. Second Dist., Div. One. Aug. 16, 1994.]

MARK S. SIMONIAN, Plaintiff and Appellant, v.
THOMAS J. PATTERSON, Defendant and Respondent;
GORDON J. ZUIDERWEG, Objector and Appellant.

**COUNSEL**

Gordon J. Zuiderweg, in pro. per., for Objector and Appellant and for Plaintiff and Appellant.

David Hoffman for Defendant and Respondent.

**OPINION**

**ORTEGA, Acting P. J.**—The trial court sustained a demurrer without leave to amend and dismissed the complaint as to one defendant (Thomas J. Patterson) and sanctioned plaintiff (Mark S. Simonian) and his attorney (Gordon J. Zuiderweg) $2,500 for their frivolous tactics taken solely to harass Mr. Patterson. (Code Civ. Proc., § 128.5.) Both plaintiff and his attorney have appealed.

This litigation concerns plaintiff's no-holds-barred attempt to retrieve a diamond engagement ring and other personal property from his ex-fianceé, Barbara Patterson. In a misguided abuse of the legal system allegedly to disgorge these items, plaintiff, a lawyer, sued Ms. Patterson's father on various contract and tort theories, all of which are utterly frivolous and clearly not actionable as a matter of law.

Failing to persuade the trial court of his complaint's merit, plaintiff appealed from both the dismissal and the sanctions orders. Plaintiff claimed a valid conversion action exists against Mr. Patterson for helping his daughter move record albums and Christmas decorations from her old apartment which she shared with plaintiff to her new apartment. By plaintiff's admission at oral argument on appeal, the albums and decorations are only worth about $1,000.

Like the trial court, we know a sham pleading when we see one. This one would be laughable if it did not have such serious consequences to its target,

Mr. Patterson. The record leaves no doubt that this utterly frivolous and totally meritless appeal is being pursued solely for the improper purposes of delay and harassment. This abusive action against Mr. Patterson deserves to be brought to the attention of the State Bar. (Bus. & Prof. Code, § 6086.7, subd. (c).) We affirm the judgment and direct plaintiff and his attorney to pay additional sanctions on appeal.

## FACTS

According to the first amended complaint, plaintiff and Ms. Patterson had an on-again, off-again romantic relationship. They were romantically involved again between December 1990 and July 1991, and became engaged "again" on May 24, 1991. Ms. Patterson was "again" given a diamond engagement ring which, "[d]ue to the volatile nature of their relationship," she promised to return if they should separate.

On June 29, 1991, Ms. Patterson announced the engagement was over and she would move from the couple's Playa del Rey apartment. The engagement ring was in her safe deposit box and would be returned upon demand. Hoping for a reconciliation, plaintiff agreed.

When Ms. Patterson moved out on July 13, 1991, plaintiff agreed she could take certain antique furniture and furnishings to her new apartment in Sherman Oaks. In return, Ms. Patterson agreed to continue their romantic relationship and to "refrain from 'seeing' her former fianceé, Louis Pieper, and refrain from dating other men."

On July 13, 1991, Mr. Patterson helped move the antique furniture and furnishings which were agreed upon by plaintiff to Ms. Patterson's new apartment. In addition, however, Mr. Patterson also helped his daughter move a rug, record albums, and Christmas decorations belonging to plaintiff which were not part of the agreement concerning the antique furniture and furnishings.

Later that day, Ms. Patterson "breached her agreement . . . regarding the antique furniture and furnishings by 'seeing' Louis Pieper." Because of this breach, plaintiff demanded on July 14, 1991, that she return his ring, his antique furniture and furnishings, his rug, record albums, and Christmas decorations, and repay the following sums he had lent her between January and June 1991: (1) $9,541 to purchase a car; (2) $2,000 for personal expenses; and (3) $3,500 for rent.

Ms. Patterson refused to repay the loans, claiming in particular that the car was a gift. She also refused to return the ring, Christmas decorations

and record albums. She eventually returned the rug, antique furniture and furnishings.

Before the rug, antique furniture and furnishings were returned, however, plaintiff spoke with Mr. Patterson, who promised "that, to avoid a lawsuit between his daughter and [plaintiff], he would 'see to it'" that his daughter returned the engagement ring and antique furniture and furnishings, and repaid the $9,541 car loan. Plaintiff "reasonably relied upon Mr. Patterson's representations, to [plaintiff's] detriment, based upon [plaintiff's] friendship with Mr. Patterson. In exchange for Mr. Patterson's promise of assistance, [plaintiff] refrained from filing this action from on or about July 14, 1991 to on or about August 6, 1991," a period of 24 days.

On August 6, 1991, Mr. Patterson "repudiated his prior oral agreement, by denying any responsibility for Ms. Patterson's debts and/or actions and refusing to assist [plaintiff] in any way in recovering any money or property from Ms. Patterson."

Plaintiff filed his original complaint against Ms. Patterson on August 13, 1991. Although Mr. Patterson was also named as a defendant, he was not served.

On September 22, 1991, plaintiff recovered the rug, antique furniture and furnishings from Ms. Patterson, but not the ring, record albums, and Christmas decorations.

On January 8, 1992, plaintiff filed an amended complaint which he served on both Pattersons. The amended complaint contained six causes of action against Mr. Patterson.

The first, fifth and sixth causes of action were for breach of oral contract for failing to "'see to it'" that Ms. Patterson repaid the $9,541 car loan, failing to "assist" in the return of the antique furniture and furnishings, and failing to "'see to it'" that Ms. Patterson returned the engagement ring.

The seventh cause of action, conversion, was based on Ms. Patterson's and Mr. Patterson's failure to return the antique furniture and furnishings until September 21, 1991, failure to return the engagement ring, and failure to return the record albums and Christmas decorations which were taken from the apartment without plaintiff's consent.

The ninth cause of action, negligent misrepresentation, was based on Mr. Patterson's false promises that he would "'see to it'" that the car loan was

repaid and the engagement ring was returned, and that he would "assist" in the return of the antique furniture and furnishings.

The 10th cause of action, claim and delivery, was based on the failure to return personal property as previously described.

Mr. Patterson demurred to the amended complaint and requested sanctions under Code of Civil Procedure section 128.5. The trial court sustained the demurrer without leave to amend and ordered plaintiff and his counsel to pay $2,500 in attorney fees as sanctions for filing a frivolous complaint solely to harass Mr. Patterson. The trial court dismissed the action as to Mr. Patterson and this appeal followed. Plaintiff appeals from both the sanctions and dismissal orders, and his attorney, Zuiderweg, appeals (in propria persona) from the sanctions order.

## DISCUSSION

"In examining the sufficiency of the complaint, '[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 . . . ; *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 . . . .) '[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' (*Blank* v. *Kirwan, supra*, 39 Cal.3d at p. 318.)" (*First Nationwide Savings* v. *Perry* (1992) 11 Cal.App.4th 1657, 1662 [15 Cal.Rptr.2d 173].)

A. *Breach of Oral Contract*

The first, fifth and sixth causes of action for breach of oral contract were based on Mr. Patterson's failure to " 'see to it' " that his daughter repaid the car loan and returned the ring, and his failure to "assist" in the return of the antique furniture and furnishings (which were later returned). The trial court sustained a demurrer to these causes of action for lack of consideration.

In his opening brief, plaintiff made no specific defense of his contract causes of action. Instead, plaintiff was content to assert that he had stated at

least one viable tort cause of action against Mr. Patterson, which the trial court ignored and "inexplicably and improperly linked the contract causes of action with the tort causes of action." In his reply brief, however, plaintiff felt compelled by his opponent's response brief's assertions to defend his contract causes of action. Accordingly, we will briefly discuss the contract allegations which may easily be dismissed.

 Simply put, no legal theory exists whereby Mr. Patterson, under these facts, incurred contractual liability for plaintiff's 24-day delay in filing suit against Ms. Patterson. Mr. Patterson provided no guarantee of his daughter's debts to plaintiff; Mr. Patterson is neither legal guardian nor conservator of his adult daughter. The promise made to plaintiff was one allegedly made between friends. A friend's gratuitous promise to help a creditor-friend collect a debt from a third party is unenforceable as a matter of law, notwithstanding the creditor-friend's forbearance from filing suit in reliance on the friend's promise. (See 1 Farnsworth, Contracts (1990) Bargain Lacking: Unsolicited Action, § 2.9, pp. 84-85.)

We conclude the trial court properly sustained the demurrer to the contract allegations without leave to amend. Although plaintiff contends it was an abuse of discretion to deny him leave to amend, he offers no explanation of what allegations could cure the complaint's deficiencies. On this record, accepting that the disputed statements were made, they did not create contractual liability. Plaintiff has failed to meet his burden of proving an abuse of discretion.

## B. *Conversion*

Two different categories of goods were moved from Ms. Patterson's former apartment to her new one: (1) the antique furniture and furnishings which were the subject of an agreement with plaintiff, and (2) the rug, record albums, and Christmas decorations which were not the subject of any agreement. Ms. Patterson has returned to plaintiff the antique furniture and furnishings, as well as the rug. As far as we can discern from the briefs, those returned items are no longer the subject of plaintiff's dispute with Mr. Patterson. In addition, the engagement ring no longer appears to be at issue insofar as the conversion action against Mr. Patterson is concerned.

The only items that appear to remain at issue are the record albums and Christmas decorations. Read in conformity with the rest of the complaint, the seventh cause of action for conversion alleged in relevant part that Mr. Patterson moved record albums and Christmas decorations to his daughter's new apartment without plaintiff's permission and against plaintiff's wishes.

Mr. Patterson failed to return those items in spite of plaintiff's demand for their return.

On appeal, plaintiff contends the trial court erroneously sustained the demurrer to his conversion claim, in disregard of Mr. Patterson's direct personal acts of taking possession, custody, and control of the record albums and Christmas decorations. We disagree. To paraphrase Justice Cardozo, Mr. Patterson incurred no liability by acting as a mere conduit in transferring items apparently belonging to his daughter from her former apartment to her new one, when he derived no personal gain from their transfer. (*Carson* v. *Federal Reserve Bank of New York* (1930) 254 N.Y. 218 [172 N.E. 475, 482] ["The person to be charged with liability, if he has parted before the bankruptcy with title and possession, must have been more than a mere custodian, an intermediary or conduit between the bankrupt and the creditor. Directly or indirectly he must have had a beneficial interest in the preference to be avoided, the thing to be reclaimed."].)[1]

Reading the complaint as a whole, it is plain that the record albums and Christmas decorations are no longer in Mr. Patterson's possession (if indeed they ever were) because he simply moved them from his daughter's former apartment to her new one. Since the items are not in his possession, they are obviously outside his power to return. "[A] refusal to deliver personal property is not a conversion unless the party has it in his power at the time to deliver the goods. [Citations.]" (*Emmert* v. *United Bank etc. Co.* (1936) 14 Cal.App.2d 1, 5 [57 P.2d 963].)

We deem it irrelevant that the items might not have been moved in the first instance had Mr. Patterson exercised due care in ascertaining their rightful owner. In the analogous area of bailments, the California Supreme Court has stated that "[i]f redelivery is impossible . . . because the goods have been lost or destroyed, either without fault on the part of the bailee or merely because of his negligence, there is no conversion. Negligence in caring for the goods is not an act of dominion over them such as is necessary to make the bailee liable as a converter. [Citations.]" (*George* v. *Bekins Van & Storage Co.* (1949) 33 Cal.2d 834, 838 [205 P.2d 1037].)

The simple act of moving items apparently belonging to his daughter to her new apartment did not constitute a conversion of those items. Mr.

---

[1]Justice Cardozo's " 'mere conduit theory,' . . . says that where the recipient of a transfer is but an agent of the creditor to whom the agent, without any benefit to himself, passes along property, liability will not attach to the agent. [Citations.] [¶] Where, however, the 'mere conduit' remains in possession of some portion of the funds, he will be held liable up to the amount of the funds which he retains. [Citation.]" (*In re Maxwell Newspapers, Inc.* (Bankr. S.D.N.Y. 1993) 151 Bankr. 63, 70.)

Patterson did not exercise dominion over those items sufficient to convert them to his own use in denial of plaintiff's rights. Under the facts as pled, there was no intention on Mr. Patterson's part to "convert the owner's property, or to exercise some act of ownership over it, or to prevent the owner's taking possession of his property. [Citation.]" (*Carrey* v. *Boyes Hot Springs Resort, Inc.* (1966) 245 Cal.App.2d 618, 621 [54 Cal.Rptr. 199]; *Zaslow* v. *Kroenert* (1946) 29 Cal.2d 541, 550 [176 P.2d 1].) Mr. Patterson's conduct cannot be differentiated from that of a friend who, upon visiting Ms. Patterson's new apartment, helps her move the record albums and Christmas decorations from one side of the living room to the other.

Other courts have ruled, as we do here, that no conversion occurs when " '[a] mere bailee, whether common carrier, or otherwise, . . . receive[s] property from one not rightfully entitled to possession, and, acting as a mere conduit, deliver[s] it in pursuance of the bailment, if this is done before notice of the rights of the real owner.' " (*Cresswell* v. *Leftridge* (Mo.Ct.App. 1946) 194 S.W.2d 48, 50; but see contra, *Production Credit, etc.* v. *Equity Coop, etc.* (1978) 82 Wis.2d 5 [261 N.W.2d 127, 128, fn. 5].) If a bailee or common carrier incurs no liability for conversion in receiving and forwarding goods tendered in the usual course of business (*Glass* v. *Allied Van Lines, Inc.* (Mo.App. 1970) 450 S.W.2d 217, 221; *Nanson* v. *Jacob* (1887) 93 Mo. 331 [6 S.W. 246, 249-250]), then it must follow that a father incurs no liability for conversion by moving items that apparently belong to his daughter to her new apartment. "The act of removing personal property from one place to another, without an assertion of ownership or preventing the owner from exercising all rights of ownership in such personal property, is not enough to constitute a conversion. [Citations.]" (*Itano* v. *Colonial Yacht Anchorage* (1968) 267 Cal.App.2d 84, 89 [72 Cal.Rptr. 823].)

Plaintiff contends the trial court's failure to grant leave to amend constituted an abuse of discretion. Plaintiff does not, however, provide us with additional evidentiary facts which could support his complaint. We are satisfied there is no reasonable possibility an amendment can cure this defective pleading. We conclude, as a matter of law, that the allegations of the amended complaint do not state a cause of action for conversion against Mr. Patterson.

C. *Negligent Misrepresentation*

■ Plaintiff contends the same statements comprising a contract to return property are also actionable in tort as negligent misrepresentations upon which he detrimentally relied by deferring this lawsuit for 24 days.

Mr. Patterson responds that gratuitous promises made in a social setting do not give rise to a negligent misrepresentation claim because "liability is

imposed only on those who supply information for business purposes in the course of a business or profession. This rules out casual statements or opinions given in ordinary private conversations or social meetings; the plaintiff cannot expect the defendant to exercise the same degree of care as he would when acting in a business or professional capacity. [Citations.]" (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 721, p. 820.)

Plaintiff counters that notwithstanding a business or profession limitation, he had a confidential, fiduciary relationship with Mr. Patterson, which entitled him to rely upon Mr. Patterson's promise to see to the return of his property. (Citing *Estate of Sanders* (1985) 40 Cal.3d 607 [221 Cal.Rptr. 432, 710 P.2d 232].)

Plaintiff misses the point. Mr. Patterson's breach of promise to see to the return of property is not actionable in contract, and calling that breach a tort does not make it one. In essence, the negligent misrepresentation claim is identical to the failed breach of contract claims because the information which plaintiff relied upon was nothing other than Mr. Patterson's gratuitous promise to do what he could about seeing to the return of plaintiff's property. Because no legal duty arose as a result of the gratuitous promise, any failure to see to the return of property is not recognizable as a tort cause of action.

Although plaintiff again contends the trial court abused its discretion by failing to allow an amendment, he again fails to meet his burden of proof on this point. We find no abuse of discretion.

D. *Claim and Delivery*

█ Plaintiff contends that "under California law, a cause of action to recover possession of personal property will lie if, at the time the action is commenced, the defendant *has the power to deliver the property* in satisfaction of a judgment for its possession. [Citation.]" Plaintiff maintains that a father's " '. . . power' to persuade or coerce his [adult] daughter to return . . . property" is a question of fact which the trial court may not resolve by taking judicial notice of facts outside the pleading.

No matter how one looks at it, the inescapable conclusion is that plaintiff's theory is premised on the antiquated notion that adult women are legally inferior beings who can be ordered around by men as though they were servants (see *Theama by Bichler* v. *City of Kenosha* (1984) 117 Wis.2d 508 [344 N.W.2d 513, 514-515]). There is no point in permitting a trial based on an archaic legal theory that should remain dead and buried.

Although plaintiff again contends the trial court abused its discretion by failing to allow an amendment, he again fails to meet his burden of proof on this point. We find no abuse of discretion.

E. *Sanctions Below*

■ The trial court awarded sanctions under Code of Civil Procedure section 128.5, which states in relevant part: "(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous . . . . [¶] (b) For purposes of this section: [¶] (1) 'Actions or tactics' include, but are not limited to, the . . . filing and service of a complaint . . . . [¶] (2) 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party. . . ."

Plaintiff contends a trial court impedes free access to the judicial system and places a chilling effect on litigants and their counsel by imposing sanctions for anything but the most egregious conduct and the clearest of cases. (Citing *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650-651 [183 Cal.Rptr. 508, 646 P.2d 179]; *Optical Surplus, Inc.* v. *Superior Court* (1991) 228 Cal.App.3d 776, 784 [279 Cal.Rptr. 194].) If this complaint fails to demonstrate egregious conduct and one of the clearest cases of a frivolous and meritless action, then the standard is worthless.

Plaintiff calls simplistic the argument of opposing counsel that plaintiff and his counsel should have known better as attorneys than to sue Mr. Patterson. But as the California Supreme Court noted in the related context of frivolous appeals, an objective finding that an appeal is devoid of all merit is evidence of an appellant's subjective bad faith. (*In re Marriage of Flaherty, supra*, 31 Cal.3d at p. 649; *Summers* v. *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1073 [275 Cal.Rptr. 594].)

In this case, any reasonable person would conclude the contract and tort claims against Mr. Patterson are totally and completely devoid of merit. While plaintiff's attorney claims to have believed in the merits of his attorney-client's claims against Mr. Patterson, the question is not even fairly debatable. This was not a close call by any stretch of the imagination.

The danger here is not from any potential chilling effect our ruling will have on future litigants and their counsel. Quite the contrary, the complaint's allegations are so outrageous that any other ruling would only serve to encourage future irresponsible actions or tactics by these appellants who,

with their law degrees and licenses, have a superior right of access to the judicial system than do other citizens.

The tenor of appellants' briefs hints the mere granting of sanctions suggests a lack of analysis, poor reasoning, and prejudice on the part of the trial court. The record, however, conclusively demonstrates the validity of the trial court's findings and exercise of discretion.

While appellants attack the amount of the $2,500 award as excessive and unsupported by the record, the supporting declaration of opposing counsel below would have justified an even greater award. The trial court reduced the amount requested by about $3,500. Appellants have failed to demonstrate an abuse of discretion.

## F. Sanctions on Appeal

The respondent's brief requested sanctions on appeal of $5,625, supported by counsel's declaration that he billed in excess of 25 hours on this appeal at his customary hourly rate of $225. (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a).) We granted appellants two extensions on their reply brief so they could address this issue, which they did both in their brief and at oral argument on appeal. Prior to oral argument, our court clerk telephonically notified appellants to be prepared to address the sanctions issue at the hearing. Accordingly, we conclude sufficient notice, opportunity to respond, and a hearing were given to appellants. (*National Secretarial Service, Inc.* v. *Froehlich* (1989) 210 Cal.App.3d 510, 524, fn. 12 [258 Cal.Rptr. 506].)

"*In re Marriage of Flaherty*[, *supra*,] 31 Cal.3d 637 . . . sets forth alternate subjective and objective guidelines for determining whether an appeal is frivolous: '[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.' (*Id.* at p. 650.)" (*Hummel* v. *First National Bank* (1987) 191 Cal.App.3d 489, 494-495 [236 Cal.Rptr. 449].)

In this case, no reasonable attorney could have thought this complaint or this appeal meritorious. In fact, the question of merit is not even arguable. The utter absence of merit and our review of the record compel us to conclude this appeal was filed merely to harass Mr. Patterson (and indirectly, his daughter) and to delay payment of defense fees incurred below. While appellants point out that a bond was posted, the money nevertheless remains unpaid to Mr. Patterson. Accordingly, the mere posting

of the bond does not prove no delay was intended. Moreover, "[d]elay, as that term is used in this context, does not simply refer to delay in *collection* of the judgment, but rather to delay in its *finality*. . . . That appellant may have paid the judgment, whether voluntarily or involuntarily, is not determinative." (*Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 132 [260 Cal.Rptr. 369], fn. omitted.)

We deem the filing of this meritless suit and the prosecution of this frivolous appeal to be a serious dereliction of duty by appellants, both lawyers. A license to practice law is not a cudgel to wield against laymen, who ordinarily are at a severe disadvantage against lawyers. Having to defend against a lawsuit can have devastating emotional and financial impact, even if the suit has no chance of success. A lawyer has such potential to wreak havoc on a hapless target that the power must be constantly kept in check. Responsible lawyers do so by adhering to our canons and ethical standards. In his zeal to exact some kind of punishment or revenge, appellant Simonian has apparently lost sight of his professional responsibility, especially when measured against record albums and Christmas decorations.

Appellant Zuiderweg is not to be treated more leniently because his client happens to be a lawyer. The fact remains that Zuiderweg is " 'not a hired gun required to carry out every direction given by the client. [Citation.] As a professional, counsel has a professional responsibility not to pursue an appeal that is frivolous or taken for the purpose of delay, just because the client instructs him or her to do so. [Citation.] Under such circumstances, the high ethical and professional standards of a member of the bar and an officer of the court require the attorney . . . to withdraw from the representation of the client.' " (*Young* v. *Rosenthal, supra*, 212 Cal.App.3d at p. 134, quoting *Cosenza* v. *Kramer* (1984) 152 Cal.App.3d 1100, 1103 [200 Cal.Rptr. 18].)

Rule 3-200 of the California State Bar Association's Rules of Professional Conduct provides: "A member shall not seek, accept, or continue employment if the member knows or should know that the objective of such employment is: [¶] (A) To bring an action, conduct a defense, assert a position in litigation, or take an appeal, without probable cause and for the purpose of harassing or maliciously injuring any person; or [¶] (B) To present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by a good faith argument for an extension, modification, or reversal of such existing law."

On this record, we lay the blame for prosecuting this frivolous appeal equally at the feet of both appellants. (See *Hummel* v. *First National Bank, supra*, 191 Cal.App.3d at p. 496.)

"In determining the appropriate relief, the underlying policy of Code of Civil Procedure section 907 should control. The object of imposing a penalty for a frivolous appeal has two components: to discourage further frivolous appeals; and to compensate for the loss which results from the delay. In determining the amount of sanctions we consider the facts surrounding the appeal and the effect of the delay. [Citation.]" (*In re Marriage of Economou* (1990) 223 Cal.App.3d 97, 107 [272 Cal.Rptr. 673] [$30,000 in total sanctions]; *Bank of California* v. *Varakin* (1990) 216 Cal.App.3d 1630, 1640 [265 Cal.Rptr. 666] [$37,000 in total sanctions]; *Hummel* v. *First National Bank*, *supra*, 191 Cal.App.3d at p. 496 [$50,000 in sanctions].) We are authorized to "impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require." (Cal. Rules of Court, rule 26(a).)

Upon careful consideration of the expenses and inconvenience to the court and respondent caused by this frivolous appeal, and of the utter outrageousness of this matter, we assess sanctions of $50,000 against appellants, jointly and severally. This large amount is necessary to discourage appellants, who are obviously willing to pursue totally baseless claims, from doing so again.

At oral argument on appeal, plaintiff attempted to explain he brought this appeal not to defend the merits of his complaint, but to challenge the award of sanctions in excess of the statutory State Bar reporting limit. This explanation rings hollow in light of his opening brief's request that we reverse the complaint's "improper dismissal," and his reply brief's full defense of each cause of action. Plaintiff's appellate briefs put Mr. Patterson and this court to the task of responding to each meritless contention. Plaintiff acquiesced to the trial court's dismissal of his complaint only after being notified that this court was seriously considering respondent's request for sanctions on appeal.

Plaintiff and his counsel needlessly burdened this court's limited resources at the expense of other litigants whose meritorious appeals were unreasonably delayed. Having thus wasted taxpayers' funds, plaintiff and Zuiderweg must compensate for the cost of processing this appeal. This district previously estimated the average cost to process a civil appeal at a conservative $3,995. (*Alicia T.* v. *County of Los Angeles* (1990) 222 Cal.App.3d 869, 886 [271 Cal.Rptr. 513], citing *Young* v. *Rosenthal, supra*, 212 Cal.App.3d at pp. 136-137, fn. 40.) Based upon this conservative estimate, we direct that $4,000 is payable immediately to the clerk of this court. The balance of $46,000 in sanctions is payable immediately to respondent Mr. Patterson.

## DISPOSITION

We affirm the judgment. We assess sanctions of $50,000 against both appellants Simonian and Zuiderweg, jointly and severally. Of that amount, $4,000 is payable immediately to the clerk of this court and $46,000 is payable immediately to respondent Mr. Patterson. Respondent is also awarded costs on appeal.

Pursuant to Business and Professions Code section 6086.7, subdivision (c), the clerk of this court is directed to send a copy of this opinion to the State Bar.

Vogel (Miriam A.), J., and Masterson, J., concurred.