132 Cal.Rptr.2d 384 (2003)
107 Cal.App.4th 738
Steven REYNOLDS, Plaintiff and Appellant,
v.
Christian BEMENT et al., Defendants and Respondents.
No. B158966.
Court of Appeal, Second District, Division Two.
April 2, 2003.
Rehearing Denied May 1, 2003.
Review Granted July 23, 2003.
*386 The Legal Solutions Group, Robert S. Boulter, San Francisco; Law Office of Jonathan Weiss and Jonathan Weiss, Beverly Hills, for Plaintiff and Appellant.
Van Bourg, Weinberg, Roger & Rosenfeld, Ellyn Moscowitz, Anaheim, Joanna Mittman for The Building and Construction Trades Council of Alameda County, The Building and Construction Trades Council of Los Angeles and Orange Counties, The Building and Construction Trades Council of San Bernardino and Riverside Counties, The District Council of Iron Workers for the State of California and Vicinity, The Northern California Carpenters Regional Council, The International Brotherhood of Electrical Workers Local 11, The Painters District Council Local 36, The Roofers Union Locals 81, 36 and 220, The Sprinkler Fitters United Association, Local 483; Saperstein, Goldstein, Demchak & Bailer, David Borgen, Oakland, Darci Burrell and Joshua Konecky, for The Impact Fund, Asian Law Caucus, Inc., Asian Pacific American Legal Center, California Employment Lawyers Association, The Legal Aid SocietyEmployment Law Center, La Raza Centro Legal, Inc., and Women's Employment Rights Clinic at Golden Gate University School of Law as Amici Curiae on behalf of Plaintiff and Appellant.
Munger, Tolles & Olson, Alan V. Friedman, Kathleen M. McDowell, Linda S. *387 Goldman, Los Angeles, and Katherine M. Forster for Defendants and Respondents.
Paul, Hastings, Janofsky & Walker and Paul Grossman, Los Angeles, for California Employment Law Council as Amicus Curiae on behalf of Defendants and Respondents.
*385 NOTT, J.
Appellant Steven Reynolds appeals from the trial court's order sustaining the demurrers of respondents Christian Bement, David Sunkin, Phillip Colburn, Alexander Kyman, Gregory Helm, Daniel Seigel, Stuart Buchalter, and James Smith, to Reynolds's first amended complaint (FAC). The California Employment Law Council has filed an amicus brief in support of respondents. The Building and Construction Trades Council of Alameda County, The Building and Construction Trades Council of Los Angeles and Orange Counties, The Building and Construction Trades Council of San Bernardino and Riverside Counties, The District Council of Iron Workers for the State of California and Vicinity, The Northern California Carpenters Regional Council, The International Brotherhood of Electrical Workers Local 11, The Painters District Council Local 36, The Roofers Union Locals 81, 36 and 220, The Sprinkler Fitters United Association, Local 483, The Impact Fund, Asian Law Caucus, Inc., Asian Pacific American Legal Center, California Employment Lawyers Association, The Legal Aid SocietyEmployment Law Center, La Raza Centro Legal, Inc., and Women's Employment Rights Clinic at Golden Gate University School of Law have filed amicus briefs in support of Reynolds.
Respondents are officers and directors of Earl Scheib, Inc., and Earl Scheib of California, Inc. (the corporate defendants are hereafter collectively referred to as Scheib), who are alleged to have knowingly implemented unlawful wage and hour policies to the detriment of Scheib shop managers and assistant shop managers. We are asked to determine if corporate agents can be personally liable for unpaid wages based on their status as "employers" or because they allegedly committed tortious acts. On the facts alleged here, we conclude in the negative and affirm the judgment.

CONTENTIONS
Reynolds contends that: (1) the FAC properly pled 10 causes of action against respondents; (2) public policy requires a reversal; and (3) respondents should be held personally liable for causing a corporation's unlawful or tortious acts.

FACTS AND PROCEDURAL BACKGROUND
Reynolds, a former Scheib shop manager, filed a complaint[1] against Scheib on March 13, 2000, seeking damages, equitable relief, and restitution on behalf of himself, the general public, and other similarly situated employees of Scheib working in California, from March 13, 1996, to the present. Reynolds subsequently added Scheib's president, Christian Bement, who cross-complained and removed the case to federal court. On July 9, 2001, the case was remanded to the state court. Reynolds named the remaining respondents as defendants. On November 14, 2001, respondents, with the exception of Bement, demurred to the complaint. The trial court sustained the demurrer with leave to amend.
Reynolds filed the FAC as a class action lawsuit on December 31, 2001, against respondents *388 and Scheib,[2] alleging the following causes of action: (1) failure to pay overtime compensation in violation of Labor Code section 1194[3] (against respondents and Scheib); (2) failure to pay compensation at the time of termination in violation of sections 201-203 (against Scheib); (3) unlawful deduction of wages (against respondents and Scheib); (4) conversion (against respondents and Scheib); (5) violation of section 216 (against respondents and Scheib); (6) violation of sections 1174 and 1175 (against respondents and Scheib); (7) violation of section 558 (against respondents and Scheib); (8) violation of section 1199 (against respondents and Scheib); (9) negligence per se (against respondents and Scheib); (10) negligence (against respondents and Scheib); (11) violation of Business and Professions Code section 17200 et seq. (against respondents and Scheib); (12) declaratory relief (against respondents and Scheib); (13) for an accounting (against respondents and Scheib); and (14) for injunctive relief (against respondents and Scheib).
The FAC alleges the following. It is a class action lawsuit brought on behalf of persons employed during the period of March 13,1996 to the present by Scheib as shop managers and assistant shop managers in Scheib's 54 automobile paint shops in California (the Class). Respondents are officers, agents, and/or directors of Scheib. Respondents assisted in tortious acts, including violation of overtime regulations found in wage orders, and conspired to require the Class to work unpaid overtime hours even though the Class members are not exempt from the requirement to pay overtime compensation. Respondents took unlawful deductions from Class members' pay and conspired to convert Class wages.

First cause of action

(Failure to pay overtime compensation in violation of sections 510, 1194, and applicable wage orders against respondents and Scheib)
Respondents and Scheib intentionally misclassified nonexempt employees as exempt employees in order to deprive them of overtime pay and required the Class to work in excess of eight hours per day and/or 40 hours per week without paying them overtime. Members of the Class were scheduled to work 59 hours per week, 11 hours per day Monday through Friday, and four hours per day on Saturday without overtime pay, but did not meet the test for executive employees who are exempt from overtime compensation requirements.

Third cause of action

(Unlawful deductions from Class members against respondents and Scheib)
Respondents and Scheib deducted amounts from Class members' pay for alleged clerical mistakes, calculation errors, late filed paperwork, returned checks from customers, and cash shortages. Respondents and Scheib attempted to legitimize the deductions by requiring Class members to authorize the deductions by signing preprinted forms stating that the Class member had engaged in willful misconduct, regardless of whether the member had actually engaged in any acts that would constitute willful misconduct or gross negligence, and waiving any claim to the withheld wages.

*389 Fourth cause of action

(Conversion against respondents and Scheib)
Respondents and Scheib refused to pay earned overtime wages to the Class, thereby converting the property owned by the Class.

Fifth cause of action

(Violation of section 216 against respondents and Scheib)
Respondents and Scheib refused to pay wages due or falsely denied the amount of the claimed wages in violation of section 216.

Sixth cause of action

(Violation of sections 1174 and 1175 against respondents and Scheib)
Respondents and Scheib failed to keep records of hours worked by employees in violation of sections 1174 and 1175.

Seventh cause of action

(Violation of section 558 against respondents and Scheib)
Respondents and Scheib failed to pay compensation, wages and overtime wages in violation of sections 510 and 515 and the applicable wage orders.

Eighth cause of action

(Violation of section 1199 against respondents and Scheib)
Respondents and Scheib failed to pay compensation, wages, and overtime wages in violation of section 1194 and wage orders; caused the Class members' wages to be deducted on account of cash shortages in violation of wage orders; implemented a plan to defraud the Class of their overtime wages by misclassifying them as exempt, thereby causing the Class to work long overtime hours without overtime pay; required the Class to work under prohibited conditions of labor; paid the Class less than the wage required by the applicable wage order; and violated the applicable wage orders, all in violation of section 1199.

Ninth cause of action

(Negligence per se against respondents and Scheib)
Respondents and Scheib breached their duties of care as set forth in the statutes and regulations set forth in counts one through eight when they violated the aforementioned statutes and regulations.

Tenth cause of action

(Negligence against respondents and Scheib)
Respondents were unqualified or reckless or intentionally harmed the Class in performing their duties with regard to employee compensation.

Eleventh cause of action

(Violation of Business and Professions Code section 17200 against respondents and Scheib)
Respondents and Scheib committed unfair, unlawful and fraudulent business practices by failing to pay overtime compensation; failing to pay compensation at the time of termination in violation of sections 201-203; taking unlawful deductions from the Class's pay; requiring the Class to sign preprinted forms deducting pay from its wages; and failing to keep payroll records.

*390 Twelfth cause of action

(Declaratory relief against respondents and Scheib)
Reynolds and the Class seek entry of a declaratory judgment declaring unlawful the complained-of practices and providing for recovery of sums owing to Reynolds and the Class.

Thirteenth cause of action

(For an accounting against respondents and Scheib)
Reynolds and the Class seek an accounting of amounts owed to them.

Fourteenth cause of action

(Request for injunctive relief against respondents and Scheib)
Reynolds and the Class seek injunctive relief enjoining respondents and Scheib from committing their unlawful practices.

The demurrer
On January 14, 2002, respondents demurred to the entire FAC. Scheib joined in the demurrer with respect to the fifth, sixth, seventh, eighth, ninth, and tenth causes of action for negligence. The trial court sustained the demurrer with 20 days leave to amend as to the fourth, ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth causes of action. The trial court sustained the demurrer without leave to amend as to the first, third, fifth, sixth, seventh, and eighth causes of action. Reynolds declined to amend the FAC and filed his notice of appeal on May 24, 2002.
The trial court has not yet ruled on class certification, but has stayed the action pending appeal.
Reynolds appeals, seeking reversal of the judgment as to the first, third, fourth, fifth, sixth, and eighth through twelfth causes of action.

DISCUSSION

I. Standard of review
The appellate court assumes the truth of all properly pleaded material allegations of the complaint, and gives "the complaint a reasonable interpretation by reading it as a whole and its parts in their context [citation]." (Silberg v. Anderson (1990) 50 Cal.3d 205, 210, 266 Cal.Rptr. 638, 786 P.2d 365.) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action; when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318, 216 Cal. Rptr. 718, 703 P.2d 58.) If the complaint can be cured, the trial court has abused its discretion. (Ibid.)
"To meet the plaintiffs burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action. [Citation.]" (Careau & Co. v. Security Pacific Business Credit, Inc. (1990) 222 Cal.App.3d 1371, 1386, 272 Cal.Rptr. 387 (Careau).) "However, such a showing need not be made in the trial court so long as it is made to the reviewing court." (Ibid.)
Although the appellate courts take a liberal view toward curing defects by amendment, "there is nothing in the general rule of liberal allowance of pleading amendment which `requires an appellate court to hold that the trial judge has abused his discretion if on appeal the plaintiffs can suggest no legal theory or state facts which they wish to add by way of amendment.'" (Careau, supra, 222 Cal. App.3d at pp. 1387-1388, 272 Cal.Rptr. 387.) That is, "[t]he burden is on the plaintiffs to demonstrate that the trial *391 court abused its discretion and to show in what manner the pleadings can be amended and how such amendments will change the legal effect of their pleadings. [Citations.]" (Id. at p. 1388, 272 Cal.Rptr. 387.)

II. Whether respondents are liable as employers

A. The definition of "employer" under Wage Order 9
Reynolds cites Ramirez v. Yosemite Water Co. (1999) 20 Cal.4th 785, 799, 85 Cal.Rptr.2d 844, 978 P.2d 2 for the proposition that the pertinent wage orders are quasi-legislative regulations, that should be given as much deference as statutes. Reynolds urges that Scheib's management is defined as an employer under the definition of Wage Order 9 (Cal.Code Regs., tit. 8, § 11090, subd. 2(F) (Wage Order 9)), promulgated by the Industrial Welfare Commission (IWC). As an employer, Reynolds argues, Scheib's management is liable for unpaid wages under the Labor Code. We disagree with Reynolds's argument.
Historically, employees have been able to recover unpaid wages from their employer based on statute or a theory of common law breach of contract, but not against the employer's agents. (Klaffki v. Kaufman (1921) 52 Cal.App. 48, 50, 198 P. 36.) Thus, in Oppenheimer v. Robinson (1957) 150 Cal.App.2d 420, 309 P.2d 887, the court sustained a demurrer to the plaintiffs complaint for unpaid wages against a company superintendent, stating that: "There is no allegation that plaintiff contracted with Robinson, that Robinson had any duty to pay plaintiffs wages or was guilty of any wrong. He was merely an employee of Southern Pacific and is not personally liable for nonpayment of wages to a fellow employee. (Civ.Code, § 2343; Oppenheimer v. General Cable Corp. [1956] 143 Cal.App.2d 293, 300 P.2d 151.)" (Oppenheimer v. Robinson, supra, 150 Cal. App.2d at p. 424, 309 P.2d 887.)
Nevertheless, Reynolds cites Tidewater Marine Western, Inc. v. Bradshaw (1996) 14 Cal.4th 557, 561, 59 Cal.Rptr.2d 186, 927 P.2d 296 (Tidewater) for the proposition that the IWC is the state agency empowered to formulate regulations governing employment in California and urges that it has an implied power to regulate wages and hours. Tidewater holds that a California employee presumptively enjoys the protections of IWC wage orders, as long as there is nothing in the wage orders or the Labor Code to rebut that presumption. (Id. at p. 579, 59 Cal.Rptr.2d 186, 927 P.2d 296.) In that case, our Supreme Court held that the Division of Labor Standards Enforcement's (DLSE) policy for determining whether to apply IWC wage orders to maritime employees constituted a regulation and was void for failure to comply with the Administrative Procedure Act. (Id. at p. 576, 59 Cal.Rptr.2d 186, 927 P.2d 296.) It then went on to determine that wage earners presumptively enjoy the protections of IWC wage orders, and that because nothing in the wage orders or the Labor Code rebutted that presumption, the wage orders at issue were applicable.
Reynolds cites to the broad definition of employer in Wage Order 9-2001, subdivision 2(F) promulgated by the IWC, in support of his argument that Scheib's management is liable for unpaid wages. Wage Order 9-2001 regulates wages, hours and working conditions in the transportation industry, which is defined in subdivision 2(N) of that order as "any industry, business, or establishment operated for the purpose of conveying persons or property from one place to another whether by rail, highway, air, or water, and all operations and services in connection therewith; and also includes storing or *392 warehousing of goods or property, and the repairing, parking, rental, maintenance, or cleaning of vehicles." Since 1947, "employer" has been defined in the current and previous incarnations of Wage Order 9-2001, subdivision 2(F) as "any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."
Where the Legislature specifically includes enumerated parties, and excludes others, effect must be given to that distinction. (Creutz v. Superior Court (1996) 49 Cal.App.4th 822, 829, 56 Cal. Rptr.2d 870.) Moreover, statutory interpretations that render some language mere surplusage should be avoided (Shoemaker v. Myers (1990) 52 Cal.3d 1, 22, 276 Cal.Rptr. 303, 801 P.2d 1054), and we must assume that the Legislature's references to misdemeanor penalties and fixed civil fines imposed on agents, officers, or persons are not mere surplusage. Guided by these rules, we find that Wage Order 9-2001's definition of "employer" has nothing to do with the imposition of civil liability for overtime wages, and Reynolds has not persuaded us of any connection. Indeed, our reading of Wage Order 9-2001 convinces us that the IWC draws a distinction between "employers" and "employers and their agents." That wage order provides for civil penalties against "employers and their agents" in part 20.[4] Furthermore, subdivision 20 of Wage Order 9-2001 refers to section 1199, which imposes misdemeanor civil fines on employers, officers or agents who require employees to work longer hours than agreed upon, pay employees less than the minimum wage, or violate any provisions of the wage and hour sections.
In addition, as reflected in the Labor Code, the Legislature has seen fit to make a distinction between "employers" on the one hand, and "officers, agents, management and other individuals" on the other hand, for the purpose of imposing liability as opposed to civil penalties. Thus, the Legislature has determined that the party "employing labor" bears the burden of complying with the wage and hour laws. In contrast, only misdemeanor penalties and civil fines can be imposed against persons acting on behalf of an employer or officers and agents of the employer.
For instance, section 510 requires the "employer" to comply with overtime compensation, while section 558, subdivision (a) provides for civil penalties against "employers or their agents."[5] (See § 553 *393 ["any person" who violates overtime laws is guilty of a misdemeanor]; § 225.5 ["every person" who unlawfully withholds wages due any employee in violation of § 212, 216, 221, 222, or 223 shall be subject to civil penalties. The penalty shall be recovered by the Labor Commissioner; shall be brought in the name of the People of the State of California and the Labor Commissioner; and all money shall be paid into the state treasury]; § 1197.5 ["employer" is forbidden from paying any unequal wage for equal work on the basis of sex and is liable for double damages to an employee who suffers such discrimination]; § 1199.5 [misdemeanor penalties imposed against "[e]very employer or other person acting either individually or as an officer, agent, or employee of another person" in paying an employee a wage less than the rate paid to an employee of opposite sex as required by § 1197.5]; §§ 204b, 205 ["employer" required to establish regular paydays]; § 210 [civil penalty imposed on "persons" who violate §§ 204b, 205]; § 207 [an "employer" is required to post a notice specifying regular paydays and the time and place of payment]; §§ 208, 209 [payment by "employer" in case of discharge or strike]; § 215 ["any person, agent, manager, superintendent, or officer" who violates § 204, 204b, 205, 207, 208, 209, or 212 is guilty of a misdemeanor].) Most tellingly, section 1194, which specifically authorizes an employee to bring a civil action for overtime wages, does not enumerate persons, agents, managers, superintendents, or officers as parties who may be liable in a private civil action.[6]
Reno v. Baird (1998) 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333 is instructive. In that case, our Supreme Court noted that the Fair Employment and Housing Act (FEHA), through Government Code section 12926, subdivision (d), specifically defined an employer as "any person regularly employing five or more persons, or any person acting as an agent of an employer." The court determined that the FEHA intentionally drew a distinction between the prohibition against an "employer" from engaging in discrimination under Government Code section 12940, subdivision (a) and the prohibition against an "employer or person" from engaging in harassment under Government Code section 12940, subdivision (h). In that case, the Legislature clearly provided that the "employer" shall be liable for discrimination, and the "employer or person" shall be liable for harassment. Similarly, here, the Legislature has placed liability for civil fines and misdemeanor penalties on "any person" but responsibility for compliance with wage and hour laws on the "employer."
Thus, both the wage orders and the Labor Code rebut Reynolds's presumption that the broad definition of employer contained in Wage Order 9-2001 applies to all sections of the Labor Code, thereby bringing under its umbrella managers, agents, or anyone with supervisory power.[7] We *394 also reject Amicus Building and Construction Trades Council of Alameda County's proposal that respondents fall within the definition of "employer" by virtue of the reference to "employers" in the phrase "every person employing labor" (§ 1174) and the definition in Labor Code section 18 of "person" as "any person, association, organization, partnership, business trust, limited liability company, or corporation."

B. The definition of "employer" under Bureerong
Reynolds next urges that respondents are employers based on the holding of Bureerong v. Uvawas (C.D.Cal.1996) 922 F.Supp. 1450 (Bureerong). He cites Bureerong for the proposition that "California courts would likely adopt the federal [Fair Labor Standards Act's (FLSA)] broad definition of `employment' [and] would likely focus on the `economic realities' of the relationship, rather than on mere contractual or technical distinctions." (Id, at p. 1470, fn. omitted.) In that case, the plaintiffs were immigrant garment workers who allegedly were falsely imprisoned in a complex in El Monte, California, and employed in a system of involuntary servitude. The plaintiffs brought suit against a number of clothing manufacturers that were not directly involved in operating the El Monte facility.
The court noted that the FLSA broadly defines "employer" as "`any person acting directly or indirectly in the interest of an employer in relation to an employee[.]'" (Bureerong, supra, 922 F.Supp. at p. 1467.) In concluding that the plaintiffs had sufficiently pled a cause of action against the defendants for failure to pay minimum wage and overtime under the FLSA to defeat a motion to dismiss, the court cited the economic realities test. That test is comprised of the following factors which tend to show an employment relationship: (1) the power to hire and fire; (2) control over employee work schedules or conditions of employment; (3) the power to determine the rate and method of payment; and (4) the power to maintain employment records. (Ibid.) In denying the defendants' motion to dismiss the second cause of action under federal law for failure to pay minimum wage and overtime, the court noted that: the plaintiffs pled that the defendants contracted with the operators of the facility to provide garments at prices too low to permit payment of minimum wage and overtime; the defendants contracted out garment manufacturing work in order to avoid compliance with labor law; the defendants directly or indirectly employed the plaintiffs as industrial homeworkers and exercised meaningful control over the work they performed; the operators acted as supervisors and managers for the defendants; the facility was an integral part of the process of garment manufacturing for each defendant; and the plaintiffs were an integral part of the defendants' businesses. Basing its holding on the broad definition of "employer" set forth by the FLSA and the liberal federal notice pleading standards, the court held that the plaintiffs sufficiently alleged an employment relationship between the plaintiff and the defendants. (Id. at p. 1469.)
As to the third cause of action, which arose under California labor law for failure to pay minimum wage and overtime, the court noted that the Labor Code does not specifically define "employer," "employee," and "employ." The court determined that California courts would likely adopt the federal FLSA's broad definition of "employment" because: (1) federal and state *395 minimum wage and overtime provisions are analogous and complementary; (2) the IWC defines the terms "employ," "employee," and "employer" extremely broadly in a manner similar to the FLSA; and (3) in S.G. Borello & Sons, Inc. v. Department of Industrial Relations (1989) 48 Cal.3d 341, 352, 256 Cal.Rptr. 543, 769 P.2d 399, our Supreme Court considered the nature of the work and the overall arrangement between the parties in determining whether employment existed.
We first note that in determining how much weight to give federal authority in interpreting a California wage order, courts are cautioned to make a comparative analysis between the statutory schemes. (Morillion v. Royal Packing Co. (2000) 22 Cal.4th 575, 580, 94 Cal.Rptr.2d 3, 995 P.2d 139.) Our examination of the FLSA definition of "employer" shows that it is not exactly the same as that proposed in Wage Order 9-2001. Wage Order 9-2001, subdivision 2(F) defines "employer" as "any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." The FLSA defines "employer" as "`any person acting directly or indirectly in the interest of an employer in relation to an employment.]'" (Bureerong, supra, 922 F.Supp. at p. 1467; 29 U.S.C. § 203(d).) Thus, the FLSA requires that the actor act in the "interest of the employer," a requirement not mandated in the wage order, and that could imply a much broader definition than the one set forth by the IWC wage order. We cannot assume that the IWC intended to adopt the FLSA definition of "employer." (Morillion v. Royal Packing Co., supra, 22 Cal.4th at p. 592, 94 Cal.Rptr.2d 3, 995 P.2d 139 ["where the IWC intended the FLSA to apply to wage orders, it has specifically so stated"].)
Most crucially, Bureerong, which holds persuasive value only, did not address the issue here: whether management of a corporation can be held personally liable for violation of wage and hour laws. Rather, Bureerong concerned the employer status of corporate entities. We do not believe that even were we to adopt the economic realities test, that management, rather than the corporate entity, should be considered to be the employer for purposes of personal liability. Nor are we persuaded by Reynolds's citation to an advisory letter issued by DLSE counsel which has merely persuasive value. (Yamaha Corp. of America v. State Bd. of Equalization (1998) 19 Cal.4th 1, 14, 78 Cal.Rptr.2d 1, 960 P.2d 1031.) In that case, an officer of a corporation entered into an agreement with the plaintiff under which payment of wages owed to the plaintiff was deferred in order to allow for the use of those amounts to operate the business until funding materialized. The advisory letter extensively cited from Bureerong, which we do not find persuasive, in reaching its conclusion that the officer exercised the requisite control to render him personally liable for nonpayment of wages.
As we previously discussed, we are not prepared to adopt such an expansive and broad definition of "employer." Reynolds's definition would leave virtually any management employee open to civil liability for violation of wage and hour laws.

III. Whether liability can be based on tortious acts of management or statutory causes of action

A. Liability based on tortious acts of management
Reynolds next contends that regardless of whether Scheib's management is classified as an employer, by committing tortious acts, it is personally liable for causing *396 Scheib to fall below the standards set by section 510 and/or Wage Order 9.
Reynolds urges that Scheib's management committed tortious actions against the Class, citing Frances T. v. Village Green Owners Assn. (1986) 42 Cal.3d 490, 229 Cal.Rptr. 456, 723 P.2d 573 for the proposition that a director who causes the corporation to embark upon a course of unlawful or tortious conduct may be exposed to liability if the conduct falls below the statutory standard. In that case, the court held that directors may be personally liable for their own tortious conduct if they personally directed or participated in the tortious conduct. (Id. at p. 504, 229 Cal.Rptr. 456, 723 P.2d 573; see also PMC, Inc. v. Kadisha (2000) 78 Cal. App.4th 1368, 1380, 93 Cal.Rptr.2d 663 [officers and directors of corporations personally liable for tortious conduct including fraud, misappropriation of trade secrets, conspiring to violate the Sherman Act, conspiring to interfere with contractual relations, conspiring to induce breach of contract].)
"Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done." (United States Liab. Ins. Co. v. Haidinger-Hayes, Inc. (1970) 1 Cal.3d 586, 595, 83 Cal.Rptr. 418, 463 P.2d 770.) "More must be shown than breach of the officer's duty to his corporation to impose personal liability to a third person upon him." (Ibid.)
A complaint that fails to charge in specific terms any specific acts on the part of the individual defendants which constituted affirmative direction, sanction, participation, or cooperation in the alleged tortious act of the corporate defendant is susceptible to a demurrer. (Lobato v. Pay Less Drug Stores (10th Cir.1958) 261 F.2d 406, 409 [cause of action against individual officers of corporation failed where complaint did not allege individuals had anything to do with assembly or manufacture of defective bicycle].) Rather, participation in specific activities, if proved, can lead to liability on the part of directors or officers. (See Golden v. Anderson (1967) 256 Cal.App.2d 714, 719, 64 Cal.Rptr. 404 [triable issue of fact existed where facts showed that defendants were aware of preexisting brokerage relationship of seller with plaintiff, yet conspired to purchase property]; Joanaco Projects, Inc. v. Nixon & Tierney Constr. Co. (1967) 248 Cal. App.2d 821, 832-833, 57 Cal.Rptr. 48 [corporate stockholders actively participated in fraud by failing to use borrowed funds for housing].)

B. The first and third causes of action
As to the third cause of action, Reynolds argues that as employers under Wage Order 9, respondents are liable for unlawful deductions. As we previously discussed, we have concluded that respondents are not "employers" for purposes of personal liability.
In any event, our examination of the FAC leads us to conclude that the trial court properly sustained the demurrer to the first and third causes of action on the ground that the allegations are not sufficiently specific to allege personal liability. As to the first cause of action for failure to pay overtime compensation in violation of sections 510, 1194 and applicable wage orders, and the third cause of action for unlawful deductions from wages, Reynolds alleged the following. Respondents forced the Class "to work long overtime hours without overtime pay even though [the Class] actually [spends] the vast majority of their workweek performing routine physical tasks and sales functions." Respondents *397 exercised control over the wages, hours, or working conditions of the Class members and "authorized, directed, sanctioned, consented, cooperated, approved, aided, instigated, assisted, participated in, and voted for tortious and unlawful acts of commission or omission which have operated to the injury and prejudice of the Class, including but not limited to causing the Corporate Defendants to violate the overtime regulations found in the applicable wage order...." Respondents "knowingly and willfully conspired among themselves and agreed to and did institute a plan pursuant to which the [respondents] required the Class to work unpaid overtime hours notwithstanding the fact that the Class members are not exempt from the requirement to pay overtime compensation under either California's `executive' exemption or any other applicable exemption under California law." Respondents conspired to take unlawful deductions from Class members' pay and conspired to convert their wages. Furthermore, respondents cooperated in the conspiracy by ratifying the acts of each respondent, voting for or otherwise approving of continuing unlawful wage practices, refusing to halt the conversion of Class property, and failing to conduct an investigation into the wage and hour violations.
These allegations are simply insufficient to give notice of facts showing that the respondents actively participated in any specific, tortious acts. By way of contrast, the plaintiff in Frances T. v. Village Green Owners Assn., supra, 42 Cal.3d 490, 229 Cal.Rptr. 456, 723 P.2d 573 defeated a demurrer by alleging that the homeowner's association at the condominium complex where she lived breached its duty of care by taking affirmative action that resulted in her being raped and robbed. The complaint alleged that the association was on notice of a crime wave of break-ins, that plaintiffs unit had recently been burglarized and that there was a link between the lack of lighting and crime. Despite repeated requests from other residents to improve the lighting condition, the homeowner's association refused to take action. Moreover, the complaint alleged that the defendant condominium association ordered the plaintiff to remove lights she had installed to improve security outside her unit, resulting in the extinguishing of all exterior lights. Shortly afterward, the plaintiffs unit was broken into, and she was raped and robbed. The complaint alleged a second breach of a duty of care to the plaintiff in that the association failed to repair the hazardous lighting condition within a reasonable period of time. The court concluded that the plaintiff had alleged sufficient facts showing that the association had authorized, directed or participated in the allegedly tortious conduct. (Id. at p. 509, 229 Cal.Rptr. 456, 723 P.2d 573.)
Rather than alleging specific acts, meetings, conversations, or directives, Reynolds has set forth a list of general allegations, vaguely alleging a conspiracy. None of the respondents is specifically identified as engaging in any prohibited acts. The first and third causes of action do not allege torts in themselves, but allege violations of the Labor Code. We conclude the trial court did not err in sustaining the demurrer to the first and third causes of action.

C. The fourth cause of action
"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiffs ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption *398 of control or ownership over the property, or that the alleged converter has applied the property to his own use." (Oakdale Village Group v. Fong (1996) 43 Cal.App.4th 539, 543-544, 50 Cal. Rptr.2d 810.)
As to the cause of action for conversion, the FAC alleged that respondents "[caused] the wages to be converted and otherwise withheld by and in the accounts of the Corporate Defendants for Defendants' collective benefit...." Reynolds's citation to Cortex v. Purolator Air Filtration Products Co. (2000) 23 Cal.4th 163, 178, 96 Cal.Rptr.2d 518, 999 P.2d 706 for the proposition that failure to pay wages is conversion does not advance his cause, since there, the court found that restitution was a remedy for unpaid wages, for what was essentially an equitable conversion. The plaintiff in that case did not allege the tort of conversion against officers and directors of a corporation, nor did he seek to hold officers and directors personally liable.
This case is unlike Department of Industrial Relations v. UI Video Stores, Inc. (1997) 55 Cal.App.4th 1084, 64 Cal.Rptr.2d 457 (UI) where the DLSE brought an action for conversion, among other things, against the defendant, doing business as Blockbuster Video, for failure to pay wages due as a result of a settlement agreement between DLSE and Blockbuster Video.
In contrast to UI, where the workers had an undisputed ownership right to the wages, here the Class members have not, and cannot allege an undisputed right to the claimed wages. The FAC merely alleges that the Class is entitled to overtime by virtue of its true status as nonexempt employees. Moreover, as respondents assert, a conversion action cannot lie because Reynolds has not alleged that respondents had personal possession of the wages or power to deliver the wages to the Class. (Simonian v. Patterson (1994) 27 Cal. App.4th 773, 781, 32 Cal.Rptr.2d 722.) We conclude the trial court did not err in sustaining the demurrer to the fourth cause of action for conversion.

D. Fifth, sixth, seventh, and eighth causes of action
Reynolds next contends that civil torts can be based on violation of Labor Code misdemeanor and/or public policy statutes. Reynolds alleges various violations of the Labor Code, including the fifth cause of action for violation of section 216 for refusing to pay wages due or falsely denying the amount of the claimed wages; the sixth cause of action for violating sections 1174, subdivision (d) and 1175, failing to keep payroll records; the seventh cause of action for violating section 558, violating any provision regulating hours and days of work; and the eighth cause of action for violation of section 1199, failing to pay compensation and overtime in violation of section 1194.
Stripped to its essence, Reynolds's argument is that various sections of the Labor Code have created new rights, entitling him to bring a cause of action based on each violation. We disagree with his contention. Despite Reynolds's arguments that a civil action can be brought against a perpetrator of a criminal statute, citing Stop Youth Addiction, Inc. v. Lucky Stores, Inc. (1998) 17 Cal.4th 553, 565, 71 Cal.Rptr.2d 731, 950 P.2d 1086, we conclude that these alleged Labor Code violations did not create or provide a separate basis for a cause of action. For example, Reynolds urges that section 216 embodies a public policy against fraud and oppression by decision makers regarding the payment of wages, thereby giving rise to a new cause of action under Montalvo v. Zamora (1970) 7 Cal.App.3d 69, 74, 86 *399 Cal.Rptr. 401 ["`Violation of a statute embodying a public policy is generally actionable even though no specific remedy is provided in the statute; any injured member of the public for whose benefit the statute was enacted may bring an action' "]. However, "[a] cause of action is based upon a liability created by statute within the meaning of this rule where the liability is embodied in a statutory provision and is of a type that did not exist at common law. [Citation.]" (Barton v. New United Motor Manufacturing, Inc. (1996) 43 Cal.App.4th 1200, 1209, fn. 6, 51 Cal. Rptr.2d 328.) A statutory action for fraud already exists, and therefore, Reynolds cannot create a new cause of action based on section 216.
Reynolds further contends that violations of sections 1174, 1175, and 1199 violate public policy ensuring payment of wages and preventing detrimental work conditions. These sections, he urges, set standards of conduct that were violated by respondents. Again, Reynolds's attempt to create new causes of action fails as a common-law action for negligence already exists. In any event, the sixth cause of action, for violation of section 1174, subdivision (d), which requires employers to keep records of hours that employees worked, is not tenable against respondents since it pertains only to employers, and we have found that respondents are not employers.
Moreover, it is unclear whether Reynolds would have a private right to sue under Moradi-Shalal v. Fireman's Fund Ins. Companies (1988) 46 Cal.3d 287, 304, 250 Cal.Rptr. 116, 758 P.2d 58, which holds that where there is no manifestation of legislative intent on the subject of private right to sue, no private right of action has been created. (See also Vikco Ins. Services, Inc. v. Ohio Indemnity Co. (1999) 70 Cal.App.4th 55, 62, 82 Cal.Rptr.2d 442.) As previously discussed, section 1194 is the only pertinent section under which a private right of action to recover the unpaid balance of overtime compensation is specifically sanctioned. Section 1193.6 states that the DLSE may, with or without the consent of the employee, prosecute a civil action to recover unpaid minimum wages or unpaid overtime compensation.

E. Ninth and tenth causes of action
Reynolds argues that sections 216, 1175, and 1199 impose duties on the part of respondents to the Class, and also set standards of conduct, citing Hoff v. Vacaville Unified School Dist. (1998) 19 Cal.4th 925, 80 Cal.Rptr.2d 811, 968 P.2d 522. That case involves the application of Evidence Code section 669, which codified existing law regarding the presumption of negligence. Evidence Code section 669 presumes the failure of a person to exercise due care if he violates a statute of a public entity; the violation proximately caused death or injury to the person or property; the death or injury resulted from an occurrence of the nature of which the statute was designed to prevent; and the person suffering the death or injury to his personal property was one of the class of persons for whose protection the statute was adopted.
Reynolds contends that respondents were negligent in breaching their statutorily imposed duties to oversee employee compensation. We conclude, however, that the bare allegation of a statutory violation is insufficient to plead a duty of care. That is, "either the courts or the Legislature must have created a duty of care. The presumption of negligence created by Evidence Code section 669 concerns the standard of care, rather than the duty of care. [Citation.]" (Rosales v. City of Los *400 Angeles (2000) 82 Cal.App.4th 419, 430, 98 Cal.Rptr.2d 144.)

F. Eleventh cause of action
Reynolds argues that respondents engaged in unfair competition by violating the Labor Code through failure to pay wages, citing Hudgins v. Neiman Marcus Group, Inc. (1995) 34 Cal.App.4th 1109, 1126, 41 Cal.Rptr.2d 46 for the proposition that a wage policy or practice that violates the Labor Code may also be held to violate Business and Professions Code section 17200. He concedes that a plaintiff alleging unfair business practices must state with reasonable particularity the facts underlying the statutory elements of the violation. (Khoury v. Maly's of California, Inc. (1993) 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708.)
Reynolds, however, has not convinced us that the officers and directors can be held liable as employers or that he has alleged personal participation or conduct that would make them liable under Business and Professions Code section 17200. (People v. Toomey (1984) 157 Cal.App.3d 1, 14, 203 Cal.Rptr. 642, disapproved on other grounds in Adams v. Murakami (1991) 54 Cal.3d 105, 109-110, 284 Cal.Rptr. 318, 813 P.2d 1348.) Moreover, Reynolds has failed to allege, as required in order to succeed on an unfair competition cause of action, that members of the public are likely to be deceived. (Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 211, 197 Cal.Rptr. 783, 673 P.2d 660.)

G. Twelfth cause of action
We conclude that Reynolds also fails to state a claim for declaratory relief because no underlying claim exists. (Code Civ. Proc, § 1060.)
Since Reynolds has chosen to stand on those causes of action as to which the trial court granted leave to amend, we conclude that he cannot amend the FAC to allege more specific facts.

DISPOSITION
The judgment is affirmed. Respondents shall receive costs on appeal.
We concur: BOREN, P.J., and ASHMANN-GERST, J.
NOTES
[1] The complaint is not contained in the record on appeal.
[2] The second cause of action against Scheib is pending in the trial court. Thus, Scheib is not a party to this appeal.
[3] All subsequent code section references are to the Labor Code unless otherwise indicated.
[4] Subdivision 20 of Wage Order 9-2001 provides: "(A) In addition to any other civil penalties provided by law, any employer or any other person acting on behalf of the employer who violates, or causes to be violated, the provisions of this order, shall be subject to the civil penalty of, [¶] (1) Initial Violation $50.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages. [¶] (2) Subsequent Violations$100.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to an amount which is sufficient to recover unpaid wages."
[5] Section 558, subdivision (a) states: "Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the [IWC] shall be subject to a civil penalty as follows: [¶] (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. [¶] (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages."
[6] Section 1194 states: "(a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."
[7] In arguing that the Legislature did not intend to impose civil liability on individuals, respondents note that Assembly Bill No. 2509, which was passed in 2000, deleted a provision that would have provided that "substantial shareholders in a corporation would be jointly and severally liable with the corporation for unpaid wages and penalties." (Assem. Com. on Labor and Employment, analysis of Assem. Bill No. 2509 (1999-2000 Reg. Sess.) as introduced Feb. 24, 2000, p. 9.) That deleted provision, however, applies to shareholders, not officers and directors, and thus is not entirely on point.